UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
WM INTERNATIONAL, INC., et al.,

                Plaintiffs,

    - against -

99 RANCH MARKET #601, et al.,

               Defendants.
------------------------------------------------------------- x

**MEMORANDUM & ORDER**

17 CV 6198 (RJD) (RER)

DEARIE, District Judge:

OVERVIEW

Plaintiffs Shaoguan Risen Trading Corporation Ltd. ("SRT") and WM International, Inc. ("WMI") (collectively, "Plaintiffs") are manufacturers, distributors and importers of Double Swallow Brand Kong Moon Rice Sticky Noodles and bring claims under the Lanham Act and New York state law against numerous wholesale and retail importers and distributors of Leading Swallow Brand Kong Moon Rice Sticky Noodles (collectively, "Defendants").[1] Defendants move to dismiss Plaintiffs' Amended Complaint for (i) lack of personal jurisdiction with respect to Defendant Tawa Corporation ("Tawa"), (ii) failure to join Tian Liu, owner of the Leading Swallow trademark, as an indispensable party, and (iii) failure to state a claim with respect to Plaintiffs' New York state law claims. For the reasons set forth below, the Court will permit jurisdictional discovery with respect to whether Tawa is subject to personal jurisdiction in New York and, except as noted below with respect to Plaintiffs' trademark cancellation claim, the

---

[1] Plaintiffs bring 10 separate claims, including (i) cancellation of the Leading Swallow trademark, (ii) two Lanham Act Section 32(a) claims for registered trademark infringement caused by Defendants' "mark" and "seal", (iii) five Lanham Act Section 43(a) claims for trademark infringement, false designation of origin, false description of origin and unfair competition caused by Defendants' "mark", "seal", "wordmark" and trade dress, and (iv) two state law claims for common law infringement and unfair competition as well as deceptive acts and practices under New York General Business Law Section 133 ("Section 133").

Court denies Defendants' motions to dismiss for failure to join an indispensable party and failure to state a claim.

## DISCUSSION

I. Motion to Dismiss Defendant Tawa Corporation for Lack of Personal Jurisdiction

   *a. Legal Standard*

A plaintiff must make a prima facie showing of jurisdiction "by way of the complaint's allegations, affidavits, and other supporting evidence" to survive a motion to dismiss for lack of personal jurisdiction. Adwar Casting Co., Ltd. v. Star Gems Inc., 2018 WL 5084826, at *1 (E.D.N.Y. Oct. 18, 2018). In ruling on such a motion, "doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party" so long as the plaintiff provides more than conclusory statements without supporting facts. Id. (citing A.I. Trade Fin., Inc. v. Petra Bank, 989 F. 2d 76, 80 (2d Cir. 1993)).

To resolve a jurisdictional dispute this Court "retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003), and may order jurisdictional discovery where the Plaintiff "has made a threshold showing that there is . . . a colorable claim of jurisdiction," Leon v. Shmukler, 992 F. Supp. 2d 179, 195 (E.D.N.Y. 2014); Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782), 731 F. Supp. 587, 593 (S.D.N.Y. 1990) (Plaintiffs are entitled to jurisdictional discovery "if they have made a sufficient start and shown their position not to be frivolous").

   *b. Jurisdictional Discovery Is Warranted as to Defendant Tawa Corporation*

Pointing to a 1.5-page declaration signed by Tawa's General Counsel and Vice President of Human Resources, Defendants claim Tawa does not have any New York contacts because it "does not own, use or possess any real property in New York," "has no employees in New

2

York," "does not travel to New York to solicit or to conduct business or to provide goods or services," and "does not advertise in New York." Decl. of Iris Leon, ECF No. 39. Plaintiffs respond that the declaration is "incomplete, does nothing to resolve the numerous inconsistencies in, and questions created by, the public record" and allege on information and belief that Tawa "may be the entity that operates and directs the business" of co-defendants' RM601 and RM602 (collectively, "99 Ranch Market"), two New Jersey-based retail stores that sell and market the junior mark noodles to New York residents. Pls.' Opp. Br., ECF No. 41, at 2-3. Plaintiffs allege that 99 Ranch Market is subject to personal jurisdiction in New York because it "advertises and sells goods in and to New York" and causes New York residents to purchase its products through its online presence as well as through in-person sales at its New Jersey locations. Id. at 22.

Plaintiffs' allegations support a colorable, non-frivolous claim of jurisdiction with respect to Tawa, and as a result, Plaintiffs are entitled to jurisdictional discovery. Leon, 992 F. Supp. 2d at 195; Manhattan Life Ins. Co., 731 F. Supp. at 593. First, Plaintiffs have already made a prima facie showing—which Defendants do not challenge—that 99 Ranch Market is subject to jurisdiction in New York. See Gucci Am., Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 245 (S.D.N.Y. 2010) (finding personal jurisdiction where out-of-state defendant "took advantage of the New York market because it advertises in New York through its website [and] has some New York-based clients"). Indeed, like Gucci, Plaintiffs allege 99 Ranch Market, though physically located in New Jersey, targets New York consumers by advertising in New York newspapers and attracting New York residents to purchase its products either online or in person at its New Jersey locations. Second, Plaintiffs point to various documents in the public record evidencing there is a corporate relationship between Defendants Tawa and 99 Ranch Market, even though the existence of such a relationship does not alone establish that New York

3

has personal jurisdiction over Tawa. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) ("Where . . . the claim is that the foreign corporation is present in New York state because of the activities there of its subsidiary, the presence of the subsidiary alone does not establish the parent's presence in the state. For New York courts to have personal jurisdiction . . . the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent" (internal citations omitted)); Dorfman v. Marriott Intern. Hotels, Inc., 2002 WL 14363, at *2 (S.D.N.Y. Jan. 3, 2002) (same). Nevertheless, 99 Ranch Market's New York contacts and the allegations of a corporate relationship between Tawa and 99 Ranch Market, taken together, make it possible that Tawa is subject to personal jurisdiction in New York. Cf. Jazini, 148 F.3d at 184; Dorfman, 2002 WL 14363, at *2. Accordingly, Plaintiffs are entitled to jurisdictional discovery in order to determine whether there is a corporate relationship between Tawa and 99 Ranch Market, the nature of that corporate relationship and whether as a result of that relationship, Tawa is subject to personal jurisdiction in New York.

II. Motion to Dismiss for Failure to Join an Indispensable Party

   *a. Legal Standard*

A party may seek dismissal under Rule 12(b)(7) for failure to join an indispensable party where (i) the absent party is "required," (ii) joining the absent party would not be "feasible," and (iii) "it is determined in equity and good conscience that the action should not proceed among the existing parties." Garner v. Behrman Bros IV, LLC, 260 F. Supp. 3d 369, 380 (S.D.N.Y. 2017); see also Fed. R. Civ. P. 19.

To determine whether an absent party is "required" the Court looks to Fed. R. Civ. P 19(a) and whether:

> (1) in the person's absence complete relief cannot be accorded among those already parties or

4

>> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
>> 
>>> (i) as a practical matter impair or impede the person's ability to protect that interest or
>>> 
>>> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Id. (citing Fed. R. Civ. P. 19(a)). If the court determines that a party is "required" under Rule 19(a) but joinder would not be feasible, the court must then assess whether in equity and good conscience the action should proceed among the parties before it or should be dismissed because the absent party is "indispensable" under Fed. R. Civ. P. 19(b). Rule 19(b) sets forth the following factors to be considered by the Court in determining whether an absent party is "indispensable": (i) whether a judgment rendered in the person's absence might be prejudicial to the person or those already parties, (ii) the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (iii) whether a judgment rendered in the person's absence will be adequate, and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Id.

### b. *Tian Liu Is Neither Necessary nor Indispensable*

In its motion to dismiss pursuant to Rule 12(b)(7) Defendants challenge Plaintiffs' inability to join named Defendant Tian Liu, the owner of the Leading Swallow trademark. Defendants contend that only Tian Liu can defend the validity of the mark and only he has standing to assert defenses and counterclaims unique to the owner of the challenged mark. Defs.' Br., ECF No. 39, at 11. Defendants also claim that allowing the case to proceed without Tian Liu would leave "mere distributors and sellers of noodles" "open to a substantial risk of future litigation over the same issue," risk "inconsistent findings over the same issue" and

"threaten[] duplicative discovery." Id. at 11-12. Though Defendants acknowledge that under the Lanham Act "every actor along the distribution chain is potentially liable," they assert dismissal is warranted here because under Rule 19(b) the equities fall against Plaintiffs. Id. at 15.[2]

Trademark owners are indispensable parties under Rule 19 for purposes of canceling a trademark. This principle protects (i) absent trademark owners from the estoppel effect of a judgment in which the trademark owner did not participate and which determined the trademark to be invalid, (ii) the plaintiff's interest in avoiding multiple lawsuits concerning the same basic facts and (iii) the public's interest in efficiently utilizing judicial resources. May Apparel Group, Inc. v. Ava Import-Export, Inc., 902 F. Supp. 93, 96 (M.D.N.C. 1995) (citing Earl v. Peverett, 1991 WL 33281, at *1 (S.D.N.Y. 1991)). As a result, the owner of a trademark is an indispensable party to an action to cancel the trademark because it would be "pointless to litigate in [the owner's] absence whether plaintiffs or defendants have a superior right to the mark if [the owner's] right is superior to the rights of any parties already joined in th[e] action." Earl, 1991 WL 33281, at *1

However, a plaintiff asserting claims under the Lanham Act may choose not to name a trademark owner without running afoul of Rule 19 because trademark "[i]nfringers who may be found jointly and severally liable are not necessary parties" for purposes of the rule. Fifth Ave. of Long Island Realty Assocs. v. Caruso Management Co., Ltd., 2009 WL 412126, at *17 (E.D.N.Y. Feb. 17, 2009); Rostropovich v. Koch Intern. Corp., 1995 WL 104123, at *10-11 (S.D.N.Y. Mar. 7, 1995) (licensor of Plaintiff's music recordings was not a necessary or indispensable defendant in Lanham Act suit brought against licensee and distributor of

---

[2] Plaintiffs acknowledge that the only claim where Tian Liu may be truly indispensable is their claim for trademark cancellation, but argue the equities require all other claims to move forward without Tian Liu under Rule 19. Pls.' Opp. Br., ECF No.41, at 7 & n.1.

6

recordings); see also Temple v. Synthes Corp. Ltd., 498 U.S. 5, 8 (1990) (joint tortfeasors are "merely permissive parties" and not indispensable parties under Rule 19). As a result, "in a trademark case any member of the distribution chain can be sued as an alleged tortfeasor," but this does not require joinder of all other potential tortfeasors arising from the same infringing conduct. Make Up For Ever, SA v. SOHO Forever, LLC, 198 F.R.D. 56, 60 (S.D.N.Y. 2000); see also Sygma Photo News, Inc. v. High Society Magazine, Inc., 778 F.2d 89, 92 (2d Cir. 1985) ("all persons and corporations who . . . benefit from the infringement are jointly and severally liable as copyright infringers"). Indeed, the fact that one defendant "purportedly receives its products directly from" a party left out of the lawsuit, does not render the absent party indispensable under Rule 19. Make Up For Ever, SA, 198 F.R.D. at 61. This is consistent with the "recognized philosophy of Rule 19" to use caution and "avoid dismissal wherever possible." Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd., 647 F.2d 200, 208 (D.C. Cir. 1981); see also Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 360 (2d Cir. 2000).

Defendants point to cases dismissed pursuant to Rule 12(b)(7) because a plaintiff-licensee failed to join a licensor in a copyright or trademark action and argue the same result should apply here. However, in those cases the absent licensor had a legally protected interest in the subject matter of the litigation that it was entitled to "vigorously assert[]" and there was a significant risk that "judgement for the plaintiff-licensee could result in double obligations for the defendant, should the licensor subsequently sue on his own." Lisseveld v. Marcus, 173 F.R.D. 689, 693 (M.D. Fla. 1997); see also WD Encore Software LLC v. The Software MacKiev Co., 2016 WL 1056628, at *3 n.1 (W.D.N.Y. Mar. 17, 2016). Here, on the other hand, Defendants argue for joinder of *another defendant*, not a licensor-plaintiff, which eliminates the

risk that Defendants will be subject to double, multiple or inconsistent obligations. As a result, this case is better "analogized to other tort actions" where "all infringers are jointly and severally liable." Bassett, 204 F.3d at 358.

In contrast to the licensor-*plaintiff* cases Defendants cite, in Rostropovich the Court declined to find a would-be licensor-*defendant* "indispensable" in a Lanham Act lawsuit. 1995 WL 104123, at *11. There, the plaintiff sought to "enjoin defendants from misappropriating his property rights" but defendants "assert[ed] that a foreign non-party from whom they allegedly acquired their right must be joined." Id. The Court concluded that the case could go forward without the absent licensor because the dispute could be resolved without affecting the licensor's rights in the future and "any relief that may be granted will be limited to defendants, leaving any possible interests of [the absent licensor] unaffected." Id. Here, as in Rostropovich, Tian Liu is a foreign party named, but not yet joined, as a defendant and joint tortfeasor. Any relief granted will be limited to defendants already served, leaving Tian Liu's rights and interests untouched.

Moreover, "the equities" do not sway in favor of a different result. In Bassett the Second Circuit found that "assuming [Plaintiff's] copyright is infringed . . . dismissal [under Rule 12(b)(7)] would completely deprive [Plaintiff] of the opportunity to prevent further infringement" since the alleged indispensable party was an Indian tribe immune from suit. Bassett, 204 F.3d at 358.[3] Here, like Bassett, if Plaintiffs are not permitted to litigate claims without Tian Liu and Tian Liu cannot be served, despite Plaintiffs' extensive efforts, Plaintiffs will be deprived of the opportunity to prevent future infringement. The law permits joint and

---

[3] The Court went further to distinguish Basset from cases where Indian Tribes were determined to be indispensable parties. For example, in Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542 (2d Cir. 1991), plaintiffs sought a declaration that they were entitled to a renewal of their leases on Seneca-owned land. The Second Circuit concluded that "the nature of the relief sought by the plaintiffs . . . made clear that the [tribe] was indispensable to the action; each facet of the declaratory judgment sought by the plaintiffs . . . inextricably implicated the interests of the Seneca in whose absence the action could not proceed in equity and good conscience." Basset, 204 F.3d at 359. Here, the relief Plaintiffs seek—monetary damages and an injunction—does not require Tian Liu's presence.

8

several liability and allows plaintiffs to recover from some, but not all tortfeasors, particularly where the need to join all potentially liable tortfeasors might prevent the Plaintiff from recovering at all.

Defendants' motion to dismiss for failure to join an indispensable party is denied. The Defendants already served can be held jointly and severally liable with respect to Plaintiff's Lanham Act and New York state law claims. Defendants' motion with respect to Plaintiff's trademark cancellation claim (Count 1) is premature at this time; however, to the extent Plaintiffs are unable to serve Tian Liu once Hague Convention service procedures conclude, Defendants may renew their application to dismiss Plaintiffs' trademark cancellation claim.

III. Motion to Dismiss Plaintiffs' State Law Claims for Failure to State a Claim

   *a. Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This "plausibility standard" "asks for more than a sheer possibility that defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citations omitted).

   *b. Plaintiffs' State Law Claims Survive the Twombly/Iqbal Pleading Standard*

Defendants' move to dismiss Plaintiffs' unfair competition claim under state common law for failure to plead bad faith. Defendants also move to dismiss Plaintiffs' Section 133 claim

9

for failure to plead "intent to deceive." Defendants argue that "bad faith" is a necessary element of an unfair competition claim, "intent to deceive" is a necessary element of a Section 133 claim and assert that Plaintiffs have pleaded only legal conclusions without underlying factual support demonstrating "bad faith" or "intent to deceive." Without citing any convincing authority, Plaintiffs argue that "bad faith" is not a necessary element of an unfair competition claim and, in the alternative, Plaintiffs contend they have stated a plausible claim of "bad faith" under Fed. R. Civ. P. 12(b)(6). Pls.' Opp. Br., ECF No. 41, at 11-13. Plaintiffs also argue they have sufficiently pleaded "intent to deceive."

Plaintiffs are incorrect that "bad faith" is not required to plead an unfair competition claim under New York law. Sly Magazine, LLC v. Weider Publ'ns L.L.C., 346 F. App'x 721, 723 (2d Cir. 2009) ("To prevail on a New York unfair competition claim . . . there must be some showing of bad faith on the part of the defendants" (citing Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34-35 (2d Cir. 1995))); Sussman-Automatic Corp. v. Spa World Corp., 15 F. Supp. 3d 258, 273 (E.D.N.Y. 2014) ("The elements of unfair competition under New York State common law closely parallel the elements of unfair competition under the Lanham Act, except . . . there must be some showing of bad faith on the part of the defendants").[4] Indeed, "[w]hile there is no complete list of activities which constitute unfair competition under New York law, the essence of an unfair competition claim is that one may not act in bad faith to misappropriate the skill, expenditures, and labor of another." See CA, Inc. v.

---

[4] A minority of courts have noted that "bad faith or fraudulent intent is not always a prerequisite" in pleading an unfair competition claim. E.g., Pearson Educ., Inc. v. Kumar, 721 F. Supp. 2d 166, 191 (S.D.N.Y. 2010) (citing Adirondack Appliance Repair, Inc. v. Adirondack Appliance Parts, Inc., 148 A.D.2d 796, 798 (N.Y. 3d 1989); Hill's Supermarkets, Inc. v. Stony Brook Dairies, Inc., 7 A.D.2d 756, 756 (N.Y. 2d 1958)). However, the prevailing view is that "bad faith" is a critical element in an unfair competition claim. Indeed, even though the court in Pearson observed that the New York Appellate Division did not always find bad faith was a necessary element, the court went on to consider whether the plaintiff pleaded sufficient facts to give rise to at least an inference of bad faith. Pearson Educ., 721 F. Supp. 2d at 191-92.

10

Simple.com, Inc., 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009); see also Natural Organics Inc. v. Nutraceutical Corp., 271 F. App'x 89, 90 (2d Cir. 2008). Similarly, to plead a Section 133 claim, Plaintiffs must establish that (i) defendant used the mark and (ii) defendant acted in bad faith to deceive the public. Lacura, Inc. v. Masas U.S.A., Inc., 2016 WL 11481722, at *14 (E.D.N.Y. Feb. 9, 2016).

In trademark cases, where "the defendant is aware of the existence of the plaintiff's mark" and uses it in violation of unfair competition law, courts infer bad faith. Pearson Educ., 721 F. Supp. 2d at 191; Warner Bros., Inc. v. Am. Broad. Cos., Inc., 720 F.2d 231, 246-47 (2d Cir. 1983) ("Evidence of intentional copying raises a presumption that a second comer intended to create a confusing similarity of appearance and succeeded"); Franklin v. X Gear 101, LLC, 2018 WL 3528731, at *14 (S.D.N.Y. July 23, 2018) ("Bad faith under New York law is presumed where the defendant intentionally copied the plaintiff's mark"). To that end, "when the junior user has prior knowledge of the senior's mark and the marks are so close as to infer copying" courts find the defendant has acted in bad faith. Peek & Cloppenburg KG v. Revue, LLC, 2012 WL 4470556, at *6 (S.D.N.Y. Sept. 19, 2012) (where plaintiff "pled that [defendant] knew of [plaintiff's] mark and continued to infringe" plaintiff's unfair competition claim was sufficient to survive a motion to dismiss).

In Franklin, plaintiff alleged the defendant acquired "prior knowledge" of its logo from a sneaker expo where the defendant "had an opportunity to see plaintiff's products." Franklin, 2018 WL 3528731, at *14. The court determined that these facts "adequately allege[d] intentional copying" and "[b]ecause under New York law bad faith is presumed where intentional copying occurred the Complaint states a claim for common law unfair competition." Id. (internal citations omitted). Here, Plaintiffs allege that the Double Swallow mark has been

11

used extensively in commerce since 1979, becoming both distinctive and prominent. Am. Compl., ECF No.24, ¶¶ 22-30. Plaintiffs also allege that Defendants' Leading Swallow mark was first used in commerce in 2014 and is "an exact duplication" of Plaintiffs' logo. Id. ¶¶ 45-46. Finally, Plaintiffs allege "upon information and belief, defendants . . . were aware of Plaintiffs [mark] . . . at the time defendants . . . adopted and began to use [the] infringing designations" and then began to provide virtually identical products "to the same class of customers, through the same or similar channels of trade" "in close proximity" with the purpose of "benefitting from the good will and public recognition associated with [plaintiff's] marks and trade dress." Id. ¶¶ 50-60. These facts adequately allege (i) defendants' prior knowledge of plaintiffs' mark and (ii) junior and senior marks so similar as to infer copying and trigger the presumption of bad faith. Id.; see also Peek & Cloppenburg, KG, 2012 WL 4470556, at *6.

Like common law unfair competition claims, "actual or constructive knowledge" of the prior user's mark or dress accompanied by similarities between the marks "so strong that it seems plain that deliberate copying has occurred" give rise to a rebuttable presumption that the defendant is acting in bad faith to deceive the public under Section 133. Heritage of Pride, Inc. v. Matinee NYC, Inc., 2014 WL 12783866, at *11 (S.D.N.Y. June 20, 2014) (citing Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577, 586 (2d Cir. 1993)). Bad faith with intent to deceive also exists where a defendant adopts or uses a mark with the goal of capitalizing on the plaintiff's reputation and goodwill through confusion or deception because, for example, the junior mark is used in the same industry and within the same geographic area as the senior mark. Id. (citing Kadant, Inc. v. Seeley Mch., Inc., 244 F. Supp. 2d 19, 32 (N.D.N.Y. 2003)).

Here, Plaintiffs sufficiently pleaded "intent to deceive." Plaintiffs allege Defendants were aware of the Double Swallow mark and acted intentionally in copying the mark to provide

virtually identical products to the same customers and through the same channels of trade. Am. Comp., ECF No. 24, ¶¶186, 194-95, 204; Kadant, Inc., 244 F. Supp. 2d at 32. Indeed, a common sense comparison of the parties' respective marks makes the inference of intentional copying virtually inescapable. Defendants' motion to dismiss is denied with respect to Plaintiffs' state law claims.

## CONCLUSION

Defendants' motions to dismiss for failure to join an indispensable party and failure to state a claim are denied. To the extent Plaintiffs' efforts to serve Tian Liu through the Hague Convention are unsuccessful, Defendants may renew their motion to dismiss Count 1 only. With respect to Defendants' motion to dismiss for lack of personal jurisdiction, the Court orders jurisdictional discovery in order to determine (i) whether there is a corporate relationship between Tawa and 99 Ranch Market, (ii) the nature of that corporate relationship and (iii) whether as a result of that relationship Tawa is subject to personal jurisdiction in New York. SO ORDERED.

Dated: Brooklyn, New York
      January 8, 2019

s/ Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge